**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **NICOLE BISSONETTE, as Personal Representative of the Estate of James Mannion,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CUMBERLAND COUNTY SHERIFF KEVIN JOYCE, ARMOR CORRECTIONAL HEALTH SERVICES, INC., EDIE WOODWARD, JASON SIMPSON, and MATTHEW GLAZER,**<br><br>**Defendants.** | ) | **Docket No. 2:24-cv-00251-JCN** |

**REPLY IN SUPPORT OF CUMBERLAND COUNTY SHERIFF KEVIN JOYCE'S MOTION TO AMEND ANSWER AND TO BRING CROSS CLAIM AND THIRD-PARTY COMPLAINT**

Defendant Kevin Joyce ("the County") states the following in reply to Defendant Armor's Omnibus Opposition (ECF No. 90) to the Plaintiff's Motion for Leave to Amend (ECF No. 81) and his own Motion for Leave to Amend Answer and to File Cross-Claim and Third Party Complaint (ECF No. 82). The short version of the County's responses to Armor's opposition are these: (1) Armor failed to provide the County notice of the ABC proceeding despite the County's status as a creditor of Armor and despite statutory requirements that notice be given; (2) relatedly, the County had no knowledge of the ABC proceeding (precisely because Armor hid the proceeding from the County, making nary a mention of it in the Request for Consent; (3) Armor's argument regarding the existence of good cause *vel non* ignores key facts related directly to its own conduct (including omissions); and (4) Armor's arguments related to the viability of the proposed new claims cannot be resolved on a motion to amend; at a minimum, additional discovery will be

needed from Armor in order to assess the merits of the ABC defense, discovery which Armor has heretofore resisted. Each of these arguments is developed below.

## ARGUMENT

### 1.) Cumberland County Remained a Creditor of Armor Yet Received No Notice of the ABC Proceeding.

Armor makes the unavailing argument that the County's proposed claims are futile because they belong to the Assignee in the ABC case and were prosecuted and settled in a Florida court. ECF No. 90 at 7-8. Futility is far from established on the scant, incomplete and selective record before the court.

The intent of Florida's ABC mechanism "is to provide a uniform procedure for the administration and orderly liquidation of insolvent estates, and to ensure full reporting to creditors and equal distribution of assets according to priorities as established under this chapter." Fla. Stat. § 727.01. Consistent with that intent, § 727.111 requires assignees to provide notice to "all known creditors" of various events, including the initiation of the ABC proceedings. But here, the Assignee failed to provide the County with notice of the ABC as required by section 727.111, despite the fact that the County was a creditor of Armor Management at the time, as explained below. As evidence of this fact, attached as Exhibit 1 is a true and accurate copy of the *Petition Commencing Assignment for the Benefit of Creditors,* which includes (i) a list of creditors at Exhibit A – Item 5 thereto that does not list the County; and (ii) a list of pending lawsuits at Exhibit B – Item 7 thereto that does not list the instant case. Exhibit 1 at 15-24.

Fla. Stat. § 727.103(8) defines a "Creditor" as "any person having a claim against the assignor, whether such claim is contingent, liquidated, unliquidated, or disputed." At the time the ABC was commenced, the County had a claim against Armor Management because Armor Management remained a party to the Health Services Agreement, notwithstanding the purported

2021 assignment to Armor of CC. ECF No. 90-4 at 2-3. This is because the Health Services Agreement is governed by Maine law and, under Maine law, an assignment of contractual rights and obligations does not release the assignor from its duties unless there is a formal novation, *i.e.*, the assignor (here, Armor Health) must expressly repudiate its obligations, and the obligor (here, the County) must acknowledge that repudiation and the assignment. ECF No. 82-2 at 16 (HSA at ¶ 17.C); *Nightingale v. Leach,* 2004 ME 22, ¶ 5, 842 A.2d 1277, 1279-80; *Me. Candy & Prods. Co. v. Turgeon*, 130 A. 242, 244 (ME. 1925); *Restatement (Second) of Contracts* § 279 (1981). Yet such express repudiation and acknowledgment did not occur. The relevant portions of the assignment state as follows:

> In connection with this assignment, Armor Health will assign all of their rights and interest in the Agreement to Armor of Cumberland County, and Armor of Cumberland County will assume all of Armor Health's rights and obligations under the Agreement arising on and after the Effective Date . . . By signing this Notice below . . . you hereby (d) acknowledge and agree that the Agreement will remain in full force and effect as of the Effective Date, with each party to the Agreement having the same rights and obligations thereunder as they had prior to the Effective Date.

ECF No. 90-4 at 2.

There is *nothing* in the assignment that indicates that Armor Health was repudiating its obligations to the County under the Health Services Agreement. *See id.* To the contrary, clause (d) makes it clear that the original parties, Armor Health and the County, would "hav[e] the same rights and obligations thereunder as they had prior to the Effective Date." *Id.* The only change made by the assignment was the addition of Armor of CC to the contractual relationship.[1] Since

---

[1] This makes sense given that, as alleged in the proposed third-party complaint, Armor Health continued to supply "back room" services after the assignment necessary to allow Armor of CC to provide medical services at the County jail. *See* proposed Third-Party Complaint, ¶ 17.

there was never a novation that released Armor Health from the Health Services Agreement, it remained contractually obligated under the Agreement such that the County was its creditor (as defined in Fla.Stat. § 727.103(8)) and should have received notice of the ABC proceedings.

Thus, when the ABC proceeding began, Armor Health was obligated to the County under the terms of the Health Services Agreement, making the County a creditor for purposes of section 727.103(b). As a creditor, the County *had to be* provided notice of the ABC proceeding in order to be bound by that proceeding and the February 27, 2025, judgment. *See* Fla. Stat. 727.111. As described above, it never received that notice. *See* ECF No. 90-4 at 2. Given that lack of notice, Armor's assertion that the County "sat out" the ABC proceeding when it should have participated as the *Barrier* estate did, ECF No. 90 at 8, rings hollow.

Finally, Armor's suggestion that Cumberland County "was aware of" the ABC proceeding as early as October 2021 is belied by its own exhibit, ECF No. 90-4 (October 2021 Request for Consent form), which merely states that Armor Correctional Health Services, Inc., "has contributed assets, including personnel, used in connection with the operations of the above-referenced Agreement to Armor Health of Cumberland County, LLC." The Request for Consent signed by Sheriff Joyce and Commissioner Gorden makes no mention of the ABC proceeding whatsoever, nor does it explain the reason for the contribution of assets. *Id.* at 2-3.

**3.) Armor's Argument Concerning the County's Good Cause Omits Key Facts.**

In asserting that the County cannot show diligence or good cause for bringing its duty to defend count in early August rather than shortly after delivering its tender letter in January 2026, Armor makes several important omissions which undercut its position. ECF No. 90 at 11

First, as the County noted in its Motion to Amend, Armor never responded to the County's tender of defense letter and instead abruptly terminated the HSA in violation of the § 16A of the

contract (which required a 120-day written notice). ECF No. 82 at 7-8. Armor now claims that this termination was its response, yet offers no legal support for the proposition that this constituted sufficient notice. ECF No. 11 at 10-11. To date, the County still has not received a straight answer from Armor concerning its tender of defense, nor any legal justification for its silence.

Second, Armor points to the "nearly 180 days" between the County's tender of defense letter and its Motion to Amend. ECF No. 90 at 11. Yet Armor omits any mention of the 40-day stay in the litigation, from February 17 through March 27, which Armor itself requested. ECF No. 74. This stay permitted the parties to prepare for and participate in a scheduled a mediation on March 27, in which the County raised the issue of Armor's duty to defend and indemnify, among other issues.

Third, Armor omits the fact that it was not until the March 27 mediation that the County and Plaintiff first learned that Armor Health of Cumberland County had failed to obtain the insurance required by its contract with the County,[2] and that it did not have sufficient cash or assets to satisfy an adverse judgment for the damages being sought in this lawsuit or to meet its self-insured retention. What followed was a protracted discovery dispute stretching from mid-April to mid-July, during which Armor made every effort to avoid providing information concerning its assets and ability to self-insure.

This information was no less important to the County than the Plaintiffs for purposes of developing its cross claim and third-party claim because Armor was obligated under the contract both to indemnify and defend the County and, as part of the same obligation to maintain professional liability coverage in the amount of $1,000,000.00/$3,000,000.00 single occurrence/annual aggregate claims made insurance coverage and additional insurance coverage

[2] Armor did obtain insurance, but only subject to a three million dollar self-insured retention.

for the County and the Sheriff as additional insureds. ECF No. 82-2 at 12 (HSA at § 14). Thus, as assignee of the HSA, Armor of Cumberland County still had a contractual duty to maintain adequate insurance. ECF No. 90-4 at 2 (stating that "Armor of Cumberland County will assume all of Armor Health's rights and obligations under the Agreement arising on and after the Effective Date.").

Where the County was unaware of Armor's failure to obtain the required insurance, and its inability to self-insure, it could not have brought a cross-claim or third-party claim against Armor entities to enforce this obligation. It was Armor's dogged opposition to the production of this information that was the primary factor in the County's Motions to Amend being filed on August 6 rather than earlier in the spring of 2026.

**4.) Armor Exaggerates the Possibility of Prejudice.**

Armor's assertion that new claims will require additional discovery ignores the fact that extensive discovery has already taken place concerning the substance of the claims and defenses concerning James Mannion and the MAT program that Armor managed, including the expert witness depositions which Armor cited order to make this assertion in the first place. ECF No. 90 at 11.

In fact, what discovery remains will be limited to Armor's failure to maintain adequate insurance and to defend the County as required under the HSA, as well as Armor's argument regarding the purported futility of the County's cross-claims and third-party complaint.[3]

Moreover, the court should take any assertion of prejudice from Armor with a grain of salt.

[3] As pointed out by counsel during a recent conference with the court, any discovery needed in connection with the proposed new claims will be directed at, not by, Armor. There is nothing that the County has that Armor requires to assert its ABC defenses, Armor itself possesses all of that information. The expedience of Armor's responses will determine in large part the length of any delay caused by addition of the new claims. The County is prepared to move expeditiously with that discovery. In any event, any delay occasioned by allowing the proposed new claims will pale in comparison to the delay and additional resources necessary to initiate and prosecute the same claims in a separate action.

The amount of litigation concerning discovery in the last six months is due mostly to Armor's refusal to provide financial information of vital importance. And, to the extent that the record must be developed as it relates to Armor's futility argument, it is less a matter of prejudice and more a problem of Armor's own creation insofar as it raised the question of futility in its opposition brief in an attempt to wave away the County's cross claims and third-party complaint. The County should be afforded the opportunity to develop facts to further refute Armor's argument.

## CONCLUSION

For the foregoing reasons, Defendant Joyce respectfully requests that the court grant his Motion for Leave to Amend Answer and to File Cross Claim and Third-Party Complaint (ECF No. 82).

Dated: September 18, 2026

/s/ Peter Marchesi
Peter T. Marchesi, Esq.

/s/ Michael Lichtenstein
Michael D. Lichtenstein, Esq.

Wheeler & Arey, P.A.
Attorneys for Defendant Kevin Joyce
27 Temple Street
Waterville, ME 04901

**UNITED STATES DISTRICT COURT**
**District of Maine**

| | | |
|---|---|---|
| **NICOLE BISSONETTE, as Personal Representative of the Estate of James Mannion,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Docket No. 2:24-cv-00251-JCN** |
| **CUMBERLAND COUNTY SHERIFF KEVIN JOYCE, ARMOR CORRECTIONAL HEALTH SERVICES, INC., ARMOR HEALTH OF CUMBERLAND COUNTY, EDIE WOODWARD, JASON SIMPSON, and MATTHEW GLAZER,** | ) | |
| **Defendants.** | ) | |

**CERTIFICATE OF SERVICE**

I, Michael D. Lichtenstein, hereby certify that:

● Cumberland County Sheriff Kevin Joyce's Reply In Support of Motion for Leave to Amend Answer to Assert Cross-Claims and Third Party Claims

has been filed this day via the Court's electronic CM/ECF system which will serve a copy on counsel for all parties.

Dated: September 18, 2026

/s/ Michael Lichtenstein, Esq.
Michael D. Lichtenstein, Esq.
Wheeler & Arey, P.A.
Attorneys for Defendant Kevin Joyce
27 Temple Street
Waterville, ME 04901